## WHITELEY MALLEABLE CASTINGS COMPANY
### v. WISHON.

[No. 6,214.    Filed October 7, 1908.]

1. PLEADING.—*Complaint.*—*Master and Servant.*—*Statutory Duty.*
—*Factory Act.*—A complaint counting upon a violation of section
nine of the factory act (Acts 1899, p. 231, §8029 Burns 1908) must
show that the plaintiff was injured by reason of the failure of the
owner to safeguard an appliance specifically enumerated, in such
section, or one of the same class.    p. 292.

2. SAME.—*Complaint.*—*Master and Servant.*—*Factory Act.*—A com-
plaint alleging that the defendant operated a factory containing
rattlers set in motion by a friction-wheel, that the operation of
such machinery when unguarded is dangerous, that defendant
negligently failed to guard such machinery and the gearings there-
of, though it was practicable to do so, and by reason thereof
plaintiff was injured, states a cause of action.    p. 293.

3. WORDS AND PHRASES.—*"Gearing."*—*Factory Act.*—*Master and
Servant.*—*Statutes.*—The word "gearing" as used in section nine
of the factory act (Acts 1899, p. 231, §8029 Burns 1908) imports
a factory equipment by which motion imparted to one portion of
a machine is transmitted to another.    p. 293.

4. SAME.—*"Friction-Wheel."*—*Factory Act.*—*"Gearing."*—A "fric-
tion-wheel" is a wheel for the transmission of motion by means
of surface friction instead of teeth; and such wheel, together
with rattlers thereto attached, is within the class of appliances,
denominated "gearing," as mentioned in section nine of the fac-
tory act (Acts 1899, p. 231, §8029 Burns 1908).    p. 293.

5. TRIAL.—*Answers to Interrogatories.*—*Master and Servant.*—*Fac-
tory Act.*—*Contributory Negligence.*—Answers to interrogatories
to the jury showing that plaintiff, while standing at the end of a
rattler, undertook to throw an iron casting into such rattler, and
in so doing he slipped, his hand being caught between the un-
guarded friction wheel and the rattler, causing injury, are not ir-
reconcilable with a general verdict for plaintiff, though if he had
stood at the side of such rattler in performing his work, the
injury would not have happened.    p. 294.

6. MASTER AND SERVANT.—*Assumption of Risk.*—*Factory Act.*—The
servant does not assume risks caused by the master's violation of
section nine of the factory act (Acts 1899, p. 231, §8029 Burns
1908).    p. 296.

7. TRIAL.—*Instructions.—Master and Servant.—Choice of Ways.— Knowledge.*—An instruction that if there were two ways of performing a service—a safe and an unsafe way—and the plaintiff took the unsafe way, he would be guilty of contributory negligence, is incorrect, since it should have included plaintiff's knowledge of such ways and his voluntary selection of the unsafe way. p. 297.

8. SAME. — *Allegations. — Evidence.—Choice of Ways.—Verdict.—* Where the complaint alleged that the plaintiff attempted to pitch an iron casting into a rattler, while standing at the end thereof, which was a proper place to do such work, a general verdict for plaintiff constitutes a finding that such was a proper place to do such work. p. 297.

9. SAME.—*Instructions.—Master and Servant.—Scope of Employment.—Harmless Error.*—It is harmless error to refuse to instruct that, under section nine of the factory act (Acts 1899, p. 231, §8029 Burns 1908), a servant injured while outside the scope of his employment, cannot recover for injuries caused by the master's violation of said act, where the jury is fully instructed as to the issues and as to the evidence required in order that plaintiff may recover. p. 297.

10. SAME.—*Instructions.—Defective.—Curing.—Master and Servant.*—Instructions failing to include the statements that the servant cannot recover if at the time of the injury he was not exercising due care, and that he would not be guilty of contributory negligence if he exercised due care to avoid the injury, are not prejudicial, where such points were fully covered in other instructions. p. 298.

11. SAME.—*Instructions.—Issues.*—Where the instructions are confined within the issues and the evidence they cannot be considered erroneous. p. 299.

12. APPEAL.—*Weighing Evidence.*—Where there is some evidence tending to support every material allegation in a complaint, the judgment will not be reversed for want of evidence. p. 299.

13. EVIDENCE.—*Industrious Habit.—Swift Manner of Work.—Master and Servant.*—In an action by a servant against his master for personal injuries caused by an unguarded machine, the admission in evidence of plaintiff's habits of industry and of the rapidity of the work required of him, or of the custom of employes in doing the work required, or that the plaintiff was prevented from doing his work in the ordinary manner by reason of the position of another servant, was not prejudicial to defendant. p. 300.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Action by Granville H. Wishon against the Whiteley Malleable Castings Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Ralph S. Gregory* and *Walter J. Lotz*, for appellant.

*Edward R. Templer, Van L. Ogle* and *George H. Koons,* for appellee.

Myers, J.—Appellee brought this action against appellant to recover damages for personal injuries alleged to have been caused by appellant's failure to guard a certain friction-wheel and machinery as required by the factory act. Acts 1899, p. 231, §9, §8029 Burns 1908. The issue was formed by a complaint in one paragraph, to which a demurrer was overruled, and an answer in general denial. Trial by jury. General verdict in favor of appellee. Over appellant's motion for a new trial judgment for $1,250 was rendered on the verdict. With the general verdict the jury returned answers to 164 interrogatories. The overruling of the demurrer to the complaint is assigned as error.

Two objections are urged against the complaint: (1) It is argued that the complaint does not allege that the device in question could have been guarded without rendering it useless for the purpose for which it was intended. (2) That it fails to show that the friction-wheel and machinery in question were of the kind designated in the statute to be guarded.

The complaint shows, among other facts, that a part of appellant's machinery used in the manufacture of its goods, and situated in its manufacturing establishment, were iron structures called rattlers; that each of said rattlers was about four feet long and three feet in diameter, barrel shaped, set to revolve in a frame work, and all made of iron; that said rattlers were set in pairs on either side of a countershaft, and were made to revolve by belting, pulley-wheel, line shaft, gearing, belting, wheels and machinery connected therewith by power from a motor

dynamo, engine and boiler; that fastened on the end of this shaft, and about four feet above the floor of the room, was a friction-wheel about ten inches in diameter, with a friction surface of about five inches in width; that by means of a lever the friction surface around the end of the rattlers was brought in contact with said wheel, and the rattlers thereby were made to revolve as a part of the machinery used by appellant in the manufacture of its goods. The use of said rattlers, the manner in which they were filled and emptied, and the method of stopping and starting them were fully described. The complaint characterized appellee's employment as that of floorman. His duties were to take iron on trucks from the annealing room to what was known as the rattling room, and to assist in loading said rattlers with said iron. The complaint alleges that during all the time appellee was engaged in said work, and at the time he was injured, said rattlers and the friction-wheel, which constituted a part of said rattling machines and the gearing thereof, were negligently left wholly unguarded, and when running were dangerous to the lives and limbs of the employes, of which appellee was one, while working around the same; that "it was practical and proper for the defendant to have said rattling machine, said pulley-wheel, * * * friction-wheel and machinery of every kind, character and nature, composing said parts of said rattling machines, properly guarded, * * * and to cause the same to be kept effectually and properly guarded when in use;" that said rattler and friction-wheel could be operated as well with the guard thereon; that the rattler when not in motion was within one-half inch of the friction-wheel, which continued to revolve upon the shaft; that while appellee was engaged in discharging his duties to appellant under his employment, by assisting in filling one of said rattlers, his right hand was caught between the revolving friction-wheel and rattler, whereby it was crushed and injured. The machine in question, as particularly described in the com-

plaint, may be better understood by reference to the following cut:

A, B, C and D indicate four rattlers; E, frames; F, pulley wheel; G, shaft; H, friction-wheel; I, raised frictions on rattlers; J, rattler not in motion, and being loaded at time of injury.

It has often been affirmed as a rule of pleading that a party can have the benefit of a statute only by pleading facts showing himself clearly within its provisions. *Ft. Wayne Iron, etc., Co.* v. *Parsell* (1907), 168 Ind. 223. In the case at bar the statute upon which this action is founded does not specifically name a friction-wheel as an appliance or machine to be guarded. It does provide that gearing, shafting, "and machinery of every description therein shall be properly guarded." This statute has been construed by the appellate tribunals of this State as applying to certain specifically named appurtenances or equipments of manufacturing establishments, and all other machinery or appliances within the class designated as vats, pans, etc. *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290; *Bemis Indianapolis Bag Co.* v. *Krentler* (1907), 167 Ind. 653; *National Fire Proofing Co.* v. *Roper* (1906), 38 Ind. App. 600.

The question here is: Does the pleading show a breach by appellant of a statutory duty? It appears that the rat-

tlers were set in motion by means of a friction-wheel. 2. Appellee's hand was caught between the wheel and rattlers, and thereby injured. It appears that the appliance or machinery when in motion was dangerous to the lives and limbs of the persons there employed, and that it could have been effectually and properly guarded, and could have been operated as well with the guards thereon. These facts, while not as clearly stated as they might be, sufficiently show that the appliances which caused the injury could have been "properly guarded" without rendering the machinery useless for the purpose for which it was intended to be operated. *M. S. Huey Co.* v. *Johnston* (1905), 164 Ind. 489; *Kintz* v. *Johnson* (1906), 39 Ind. App. 280.

Was the equipment or machine in question one which the statute required appellant to guard? The statute uses the word "gearing" as designating a factory equipment 3. to be guarded. The word "gearing" is defined as "the parts by which motion imparted to one portion of an engine or machine is transmitted to another;" a "friction-wheel," as "one of the wheels in frictional gearing," and "frictional gearing" as "wheels which 4. transmit motion by surface friction instead of teeth." Webster's Dict. The friction-wheel as here described was used for transmitting motion to the rattlers, and is within that class of appliances termed by the statute as "gearing." The wheel and the rattlers were constructed with a friction surface, and with reference to each other. The motion imparted to the wheel was transmitted to the rattlers by surface friction. The appliance, as constructed and used by appellant, was fully covered by the word "gearing" found in the statute, and required to be "properly guarded." The complaint was sufficient to withstand the objections urged against it.

Appellant's motion for judgment on the answers to in-

terrogatories, notwithstanding the general verdict, was over-ruled, and this ruling is assigned as error.

Appellant insists that the answers to the interrogatories show that appellee at the time he received his injury was not exercising ordinary care, and was not at the time acting in the line of his employment, and that he selected an unsafe, instead of a safe, way to do his work. From the interrogatories we learn that appellee on August 9, 1905, was in the employ of appellant in the annealing room and the south rattling room in the capacity of what was known as a floorman. But the exact duties of a floorman are not shown. Immediately prior to the accident appellee was engaged in trucking iron castings from the annealing room into the rattling room and piling the same about the rattlers. The rattlers were set in pairs, lengthwise east and west. Between the castings and rattlers, on the north side, was a clear space about two feet in width. While the south rattler of the west pair and the friction-wheel which ran said rattlers were in motion, appellee appeared from the annealing room with a load of castings, and stopped near the center of the west end of said pair of rattlers. The north rattler was not running, and was being filled with castings taken from the pile on the north side, by a party standing in said vacant space. Appellee undertook to throw into the west end of the north rattler a piece of casting weighing about twenty pounds. In doing this he slipped, and his hand was caught between the friction-wheel and the south rattler and was injured. The top of the friction-wheel was about four feet above the floor of the room. The wheel was unguarded and in plain view of appellee, who had good eyesight and hearing. No doubt had appellee thrown the casting into the rattler from the side instead of from the end the accident would not have happened, but the answers are not such as to warrant us in saying that reasonable men would not differ in their opinion as to

whether the act of throwing the casting into the rattler, as was done by appellee, was negligent; and it not appearing that appellee, in assisting to fill the rattler, was a mere volunteer, or that he knowingly violated the master's orders, or that the act was so glaringly dangerous that an ordinarily prudent person would not have attempted it, we would not be justified in concluding that the answers are so antagonistic to the general verdict that both cannot stand, and the ruling of the trial court must be affirmed. *City of Jefferson-ville* v. *Gray* (1905), 165 Ind. 26; *Indianapolis Traction, etc., Co.* v. *Kidd* (1906), 167 Ind. 402, 7 L. R. A. (N. S.) 143; *Farmers, etc., Ins. Assn.* v. *Stewart* (1906), 167 Ind. 544; *Inland Steel Co.* v. *Smith* (1907), 168 Ind. 245; *Tucker & Dorsey Mfg. Co.* v. *Staley* (1907), 40 Ind. App. 63; *Chicago, etc., R. Co.* v. *Turner* (1904), 33 Ind. App. 264; *Union Traction Co.* v. *Sullivan* (1906), 38 Ind. App. 513.

The overruling of appellant's motion for a new trial is assigned as error. Under this assignment it is first argued that the court erred in refusing to give instructions numbered ten, eleven and twelve tendered by appellant, and in giving six, eight and nine submitted by appellee, and twenty-one and twenty-two on its own motion. The instructions tendered and refused present two propositions: (1) That the master, under the statute, is not liable in damages to a servant for injuries sustained because of a neglect to guard machinery, if, at the time of his injury, the servant was pursuing an unsafe way in which to do his work, when a safe way might have been followed; (2) that a servant cannot recover damages for an injury received on account of the neglect of the master to guard machinery, if, at the time of the injury, the servant was acting without the line of his employment, or was engaged in doing that which he was not required to do by virtue of his employment.

The question of assumed risk is not in this case. *Davis Coal Co.* v. *Polland* (1901), 27 Ind. App. 697; *American*

*Car, etc., Co.* v. *Clark* (1904), 32 Ind. App. 644;
6. *Buehner Chair Co.* v. *Feulner* (1905), 164 Ind. 368;
*Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413.
As we have said, the complaint shows that appellant could and should have guarded the machinery in question, the neglect to do which is charged to be the proximate cause of appellee's injury.

The complaint also alleges that appellee was employed by appellant in the capacity of what was known as a floorman; that the duties of a floorman were to truck iron from the annealing room to the rattling room, and there to unload the same either upon the floor or into the rattlers as ordered by the men in charge of that room, and to assist in filling the rattlers; that he had no other or further instruction with reference to his duties or the manner of doing his work; "that said rattling machines were filled either from the side or from the end on which the friction-wheel is situated;" that the noises made by the rattling machines were so great that the employes there at work were unable to hear or talk to one another, and the work of the floormen when therein was directed by signs and gestures given to them by the employes in charge of the rattling room; that appellee, while engaged in trucking iron from the annealing room into the rattling room, and when near the end of a rattling machine then being filled, was signaled by one of the men in charge of that room to unload a part of the iron into that rattler; that, in obedience to the signal, he took from his truck a piece of iron and threw it over the end of the rattler and into the same; that while thus engaged his hand was caught in the unguarded machinery and injured; that it was proper to load said rattler from the place where appellee stood at the time he was injured.

The instructions submitting the first proposition were faulty, in that they omit the element of knowledge. *Stephens* v. *American Car, etc., Co.* (1906), 38 Ind. App. 414.

If the rattlers could be filled from two positions—side and end—one dangerous and the other not dangerous, appellee could not be held to have made a choice of methods of performing his work, unless he knew, or by the exercise of reasonable care he must have known and comprehended, the probable hazard attending each. If he had this knowledge, and voluntarily selected the more dangerous of the two methods open to him of performing the service, he would be guilty of contributory negligence. *Stephens* v. *American Car, etc., Co., supra.*

By other instructions the jury were told that before appellee could recover in this action he must, by a preponderance of the evidence, prove all of the material allegations of his complaint. As we have seen, the complaint tendered the issue that it was proper to load the rattlers from the end, and that appellee, as one of the floormen, was performing his work in the usual and ordinary way.

Referring to the second proposition, it has been held that §8029, *supra,* was intended for the protection of employes, whose duties required them to work in the immediate vicinity of the factory equipment required to be guarded. *LaPorte Carriage Co.* v. *Sullender, supra.* So that if appellee's employment did not require him to work in the immediate vicinity of the machinery in question, or if he undertook to perform a service not required of him by appellant, and in the performance of which he was injured, in either case appellant would not be liable in damages for such injury, and the proposed instruction proceeding upon that theory might properly have been given. But the other instructions which informed the jurors as to the issues they were called upon to try, and the facts necessary to be found before they would be authorized to return a verdict for appellee, warrant the conclusion that the jurors could not have been misled or appellant's defense prejudiced by the refusal to give the requested instructions.

The error, if any, was harmless.   §407 Burns 1908, §398 R. S. 1881.

Considering the instructions offered by appellee, and by the court given to the jury, it is argued that instruction six was defective, for the reason that it failed to tell the jury that appellee could not recover damages resulting proximately from appellant's neglect to perform a statutory duty, if at the time appellee was not in the exercise of ordinary care.   And referring to instruction eight, it is insisted that it was not enough when instructing the jurors as to liablity of the master under the factory act to tell them that the servant will not be charged with contributory negligence if he exercised due care and diligence, under all the circumstances, to avoid the injury.   Instruction nine, in substance, told the jury that the servant does not assume the risks arising from the master's disregard of his statutory duties, and is claimed to be erroneous, for the reason that nothing was said as to the duty of the servant to exercise ordinary care.   The objections offered by appellant to these instructions might be worthy of careful consideration, were it not for the fact that the court in instruction nine told the jury that appellee was required to exercise due care and diligence under all the circumstances to avoid the injury.   In instruction twelve the jury was told that if the plaintiff was employed to place castings in the rattlers in question, as alleged in his complaint, and had a right, by virtue of his employment, to go to the place where he was at the time of the occurrence complained of, nevertheless, while in such place and at such time he was bound to exercise ordinary care and prudence on his part, ordinary care being that degree of care and foresight which a discreet and cautious individual would or ought to use if the whole risk of loss were to be his own exclusively, and if the jury found that the plaintiff had a right to be where he was at the time of the occurrence complained of in the performance of his duty, as alleged in the complaint, he

was, nevertheless, bound to exercise his own faculties so as to avoid danger if he could reasonably avoid it, and any failure on his part to do so, however slight, if it contributed proximately to the injury complained of, would prevent him from recovering any damages for such injury. By instruction fourteen the jurors were told, in substance, that although they found that a machine required to be guarded was in fact unguarded, and the duties of the servant brought him in close proximity to such unguarded machine, such servant must exercise reasonable care on his part in the use of or in working about such unguarded machine, and if by his own negligence he proximately contributes to his injury, he cannot recover. And the mere fact that the statute required certain machinery and devices to be guarded does not relieve the servant from exercising reasonable care on his part in relation thereto.

We cannot agree with appellant's construction of instructions twenty-one and twenty-two, nor do we agree that the jury could have misunderstood them. One of the 11. questions before the jury was whether appellee at the time of the accident was acting in the line of his employment, and instruction twenty-one was directed to that particular phase of the case. Twenty-two had reference only to certain facts which the jury might consider in assessing damages. These facts, being within the issues and pertinent to the evidence, were items for which appellee was entitled to compensation. The objections to these instructions are not well taken.

It is next insisted that there is no evidence to support certain material facts without which the verdict cannot stand. It is true that every material fact necessary to support the verdict must be founded upon legal evidence, 12. or the judgment will be reversed. From the evidence disclosed by the record in this case we are clearly of the opinion that the verdict in this respect is well supported. While there was a sharp conflict in the evidence as to cer-

tain material facts, we are not at liberty to interfere with the jury's conclusion on these matters, for to do so would require us to weigh the evidence, and this we cannot do. The judgment will not be disturbed for want of evidence.

Lastly, a new trial is asked on the ground that the court erred in admitting certain evidence. Upon a careful consideration of this evidence we are not impressed with the idea that it was important that the jury should know that appellee was industrious before the accident, or how fast he had to work while in the employ of the appellant. It could not have influenced the jury. The testimony of one witness as to the habit or custom of the employes in filling the rattlers from the end when they could not get to the side was certainly not prejudicial to appellant's theory that it was appellee's duty to perform his work from the side instead of from the end of the rattler. Testimony was admitted to show the conditions existing about the rattler at the time of the accident. There is also evidence tending to show that at the time of the accident an employe of appellant was filling the rattler from the side, and this fact is offered by appellee as an excuse for his assisting in filling the rattler from the end. Admitting that there was a passageway around the rattler, free from inanimate obstruction, the evidence was competent as bearing upon the question of care exercised by appellee.

Objection is made to the admission of evidence in answer to two other questions, but it is apparent that the evidence to which objection is made was not prejudicial to appellant, and therefore not sufficient cause for reversing the judgment.

Judgment affirmed.